# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CATHERINE CUTTING | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N20C-11-249 SPL |
| | ) | |
| LIVE NATION WORLDWIDE, INC., | ) | |
| 500 MARKET, LLC, and COMMERCIAL | ) | |
| CLEANING SERVICES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: June 9, 2023
Decided: July 3, 2023

*Upon Defendant Commercial Cleaning Services'*
*Motion for Summary Judgment,*
**DENIED**

## ORDER

This 3rd day of July 2023, upon consideration of Defendant Commercial Cleaning Services' ("Commercial Cleaning") Motion for Summary Judgment,[1] Plaintiff Catherine Cutting's ("Cutting") response thereto,[2] the reply and supplemental pleadings,[3] and oral argument,[4] it appears to the Court that:

---

[1] D.I. 46.

[2] D.I. 71.

[3] D.I. 80, 91.

[4] D.I. 88.

1

## BACKGROUND

1. Cutting seeks damages from Live Nation Worldwide, Inc. ("Live Nation"), 500 Market, LLC ("500 Market"), and Commercial Cleaning for injuries she allegedly sustained on February 1, 2019, while attending an event at "The Queen," an entertainment venue in the city of Wilmington.[5] She alleges that while she "was descending stairs on the . . . premises when she slipped and fell on wet steps and landed on a concrete floor" and, "as a result of the negligence of" Live Nation, 500 Market, and Commercial Cleaning, she sustained serious injuries and damages.[6]

2. On November 30, 2020, Cutting filed a complaint naming Live Nation and 500 Market as defendants.[7] On March 31, 2021, 58 days after the running of the applicable statute of limitations,[8] Cutting informed Commercial Cleaning of the pending lawsuit and of her intent to amend the complaint to add Commercial Cleaning as a defendant.[9] Then, on April 29, 2021, 87 days after the running of the

---

[5] Am. Compl. ¶ 2 (D.I. 15).

[6] *Id.*

[7] D.I. 1.

[8] DEL. CODE. ANN. tit. 10, § 8119 provides: "[n]o action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained[.]" *Id.* In Cutting's case, the statute of limitations expired on February 1, 2021.

[9] Resp. to Mot. for Summ. J., Ex. C (D.I. 71).

statute of limitations, Cutting amended her complaint to include Commercial Cleaning as a defendant.[10]

3.  Commercial Cleaning has moved for summary judgment, arguing Cutting's claims against it are barred by the two-year statute of limitations set forth in 10 *Del. C.* § 8119 and, because Commercial Cleaning was not "asked to clean or address any sort of transitory condition which may or may not have been present on the floor surface at the time of" Cutting's fall, there is no fact upon which Commercial Cleaning may be liable for Cutting's injury.[11]

4.  Cutting concedes that she amended her complaint to include Commercial Services after the running of the 2-year statute of limitations period but asserts that she is saved by the relation back "grace period" of Superior Court Civil Rule 15(c).[12]  Further, she contends that there are genuine issues of material fact concerning Commercial Cleaning's responsibility to monitor and address surface conditions within the facility.[13]

5.  Defendants Live Nation and 500 Market join Cutting's opposition to Commercial Cleaning's motion for summary judgment.[14]

---

[10] *See* Am. Compl. at 1.

[11] Mot. for Summ. J. ¶ 4 (D.I. 46).

[12] Resp. to Mot. for Summ. J. ¶ 4.

[13] *Id.* ¶ 7.

[14] D.I. 72.

3

## STANDARD OF REVIEW

6.      Under Superior Court Civil Rule 56, summary judgment will be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[15] On a motion for summary judgment, this Court "(i) construes the record in the light most favorable to the non-moving party; (ii) detects, but does not decide, genuine issues of material fact; and (iii) denies the motion if a material fact is in dispute."[16] This Court recently stated:

> Although summary judgment is encouraged, when possible, there is no right to summary judgment.  The Court may deny summary judgment if the Court is not reasonably certain whether there is a triable fact issue.  The Court may also deny summary judgment if the Court concludes a more thorough inquiry into, or development of, the facts would clarify the law or its application.[17]

7.      The statute of limitations is an affirmative defense;[18] generally, "the appropriate pleading to raise the statute of limitations defense is a summary

---

[15] Super. Ct. Civ. R. 56(c).

[16] *US Dominion, Inc. v. Fox News Network, LLC,* 2023 WL 2730567, at *17 (Del. Super. Ct. Mar. 31, 2023) (quoting *CVR Refin., LP v. XL Specialty Ins. Co.*, 2021 WL 5492671, at *8 (Del. Super. Ct. Nov. 23, 2021) (cleaned up)).

[17] *Id.* at *18 (cleaned up).

[18] *Dollard v. Callery*, 185 A.3d 694, 708 (Del. Super. Ct. 2018) (citing *Gadow v. Parker*, 865 A.2d 515, 519 (Del. 2005)).

judgment motion or a motion for judgment on the pleadings."[19]

## ANALYSIS

### A. *Statute of Limitations*

8.     Commercial Cleaning argues that because Cutting's alleged injury occurred on February 1, 2019 and the complaint was not amended to include Commercial Cleaning until April 29, 2021, "the cause of action against [it] was barred by the running of the applicable two year statute of limitations set forth within 10 Del. C. §8119."[20] Cutting responds that Superior Court Civil Rule 15(c) permits her to amend her complaint to add Commercial Cleaning after the running of the statute of limitations.[21] There is no genuine dispute that Cutting amended her complaint to add Commercial Cleaning after the expiration of the two-year statute of limitations.[22] Thus, the question for the Court to decide is whether Rule 15(c)(3) saves Cutting's claim against Commercial Cleaning.

9.     Rule 15 governs the procedures for amending a complaint.[23] Rule

---

[19] *Lee v. Linmere Homes, Inc.,* 2008 WL 4444552, at *3 (Del. Super. Ct. Oct. 1, 2008) (citing *McNair v. Taylor*, 2007 WL 2083652, at *1 (Del. Super. Ct. July 10, 2007)); Super. Ct. Civ. R. 12(c)). The statute of limitations may also be asserted in a motion to dismiss. *Dollard*, 185 A.3d at 708.

[20] Mot. for Summ. J. ¶¶ 1-2.

[21] Resp. to Mot. for Summ. J. ¶ 2.

[22] *See id.*

[23] Super. Ct. Civ. R. 15.

15(c) governs the relation-back doctrine:

> An amendment of a pleading relates back to the date of the original pleading when:
>
> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by statute or these Rules for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.[24]

10.    The Delaware Supreme Court has explained that the "relation back" doctrine established by Rule 15(c)(3) requires:

> (i) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading;
>
> (ii) the party to be brought in by amendment has received such notice of the pending action that the party will not be prejudiced in maintaining a defense on the merits; and
>
> (iii) the party to be brought in by amendment knew or should have known that, but for a mistake concerning the identity of the proper

---

[24] Super. Ct. Civ. R. 15(c).

party, the action would have been brought against the party.[25]

11.    "Superior Court Civil Rule 15 directs the liberal granting of amendments when justice so requires and, in the absence of prejudice to another party, the trial court is required to exercise its discretion in favor of granting leave to amend."[26]  "The purpose of Rule 15 is to encourage the disposition of litigation on its merits."[27]

12.    "The relation-back provision of Rule 15(c), insofar as it concerns amendments that add parties as defendants, is intended to afford a remedy for an innocent error by the plaintiff in misidentifying the defendant."[28]  But, Delaware courts traditionally take a strict approach when "considering the nature of the plaintiff's mistake in misidentifying a proper defendant."[29]    And, "Rule 15, subsection (c)(3) includes no discretionary powers for the Superior Court

---

[25] *Allmaras v. Bd. of Adjustment of Sussex Cty.*, 2020 WL 4669008, at *2 (Del. Aug. 7, 2020).

[26] *Abdi v. NVR, Inc.*, 2008 WL 787564, at *1 (Del. Mar. 25, 2008) (cleaned up).

[27] *Cordrey v. Doughty*, 2017 WL 4676593, at *3 (Del. Super. Ct. Oct. 11, 2017) (citing *Grand Ventures, Inc. v. Whaley,* 632 A.2d 63, 72 (Del. 1993)).

[28] *Ramirez v. Sheinin*, 2023 WL 4105900, at *2 (Del. Super. Ct. June 20, 2023) (citing *Johnson v. Paul's Plastering, Inc.,* 1999 WL 1240893, at *2 (Del. Super. Ct. Oct. 8, 1999)).

[29]*Allmaras*, 2020 WL 4669008, at *2 n.12 (citing *DiFebo v. Bd. of Adjustment of New Castle Cty.,* 132 A.3d 1154, 1158-59 (Del. 2016)).

to exercise."[30]  Unless Cutting's amended complaint adding Commercial Cleaning fully comports with the requirements of Rule 15(c)(3), her amended complaint will not relate back to the date of original filing.[31]

13.  There is no argument that Cutting's claims against Commercial Cleaning do not arise out of the conduct, transaction, or occurrence set forth in the original pleading.  The first requirement of Rule 15(c)(3) is, thus, satisfied.

14.  The Court must next consider whether Cutting's March 31, 2021, letter,[32] hand delivered to Commercial Cleaning Services, Inc., sufficed to place Commercial Cleaning on notice of the pending action such that the party will not be prejudiced in maintaining a defense on the merits.  Cutting's letter informed Commercial Cleaning of the "lawsuit filed in this matter," included a copy of the then-pending complaint, and stated her intent to add Commercial Cleaning as a defendant.[33]  This letter provided Commercial cleaning with notice of the "institution of the action,"[34] within 120 days of the expiration of the relevant statute

---

[30] *Taylor v. Champion*, 693 A.2d 1072, 1074 (Del. 1997) (citing *Parker v. Breckin*, 620 A.2d 229, 232 (Del. 1993)).

[31] *Id.*

[32] Resp. to Mot. for Summ. J., Ex. C.

[33] *Id.*

[34] *Mergenthaler, Inc. v. Jefferson*, 332 A.2d 396, 398 (Del. 1975).

8

of limitations.[35]  The second requirement of Rule 15(c)(3) has thus been met.

15.  The final question is whether, within the limitations period or 120 days thereafter, Commercial Cleaning knew or should have known that, but for a mistake concerning their identity, Cutting would have timely brought action against it.[36] Cutting's March 31, 2021, letter, in addition to alerting Commercial Cleaning of the "institution of the action," informed Commercial Cleaning of Cutting's intent to have timely included Commercial Cleaning in her lawsuit.  But that, in and of itself, is not enough.  The Court must determine whether Cutting's failure to name Commercial Cleaning within the designated statute of limitations was the result of a mistake concerning their identity.[37]

16.  "Delaware's approach as to what constitutes mistake under Rule 15(c) turns on plaintiffs' demonstration of intent to sue the proper parties."[38]  While Federal Courts interpreting the analogous federal rule of civil procedure are

---

[35] *See DiFebo*, 132 A.3d at 1157; *Lorenzo v. Kirk*, 2022 WL 17076224, at *2 (party may be added under Rule 15(c)(3) "*if that party received notice of the claim within the 120 days permitted for service of a complaint following termination of the relevant statute of limitations*" (emphasis added) (citing *Walker v. Handler*, 2010 WL 4703403, at *3 (Del. Super. Ct. Nov. 17, 2010)).

[36] *See Clifton v. Rite Aid of Del., Inc.*, 2020 WL 3865282, at *2 (Del. Super. Ct. July 8, 2020).

[37] *Champion*, 693 A.2d at 1074.

[38] *Cordrey,* 2017 WL 4676593, at *6 (citations omitted).

generally more forgiving to plaintiffs,[39] Delaware courts apply a strict approach to what constitutes a "mistake" that focuses on whether the plaintiff can demonstrate an intent to include the unnamed party.[40] The Delaware Supreme Court has explained, "[t]he courts generally decline to find a mistake when the plaintiff cannot demonstrate an intent to include the unnamed party before the limitations period expired but will find a mistake if the plaintiff intended to sue certain parties but was misled as to the identity of those parties."[41]

17. In *DiFebo v. Board of Adjustment of New Castle County*, the Delaware Supreme Court found there to be no mistake where "[t]he petitioner knew who owned the two properties, having been a neighbor of the property owners for over fifteen years. And the only excuse for not naming them is that [petitioner's] attorney did not research who the owners of the properties were" and made erroneous

---

[39] *See Krupski v. Costa Crociere S.p.A.,* 560 U.S. 538, 539 (2010) ("relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading"); *Difebo*, 132 A.3d at 1158.

[40] *DiFebo*, 132 A.3d at 1158.

[41] *CCS Invs., LLC v. Brown*, 977 A.2d 301, 313 (Del. 2009). While Cutting seeks to have this Court loosen Delaware's strict approach to assessing "mistake" by adopting the more lenient standard *Krupski* imposes upon the analogous federal rule, the Court declines to do so. Pl.'s Supplemental Resp. ¶ 7 (D.I. 91). As in *DiFebo*, Cutting made this request for the first time in her supplemental submission and, in any event, an application of the extant "strict" approach applied in this jurisdiction compels me to deny the motion for summary judgment.

assumptions as to ownership of the subject property.[42]  Failing to satisfy all the requirements of Rule 15(c)(3), the Delaware Supreme Court found plaintiff's claim did not relate back to the initial filing.[43]

18.    This Court, in *Cordrey v. Doughty*,[44] clarified that, under *DiFebo*, misleading conduct is not required invoke the relation-back doctrine.[45]  Rather, mistake "turns on plaintiff[']s] demonstration of intent to sue the proper parties."[46] In *Cordrey*, the plaintiffs learned the identity of additional defendants "through answers to interrogatories provided after the complaint was filed."[47]  Thereafter, the plaintiffs provided the intended defendants "notice of the institution of the proceeding after the statute expired, but within the period provided by the Rules for service of the summons and the complaint."[48]  The plaintiffs in *Cordrey* met the requirements of Rule 15(c)(3), and the new defendants were properly joined within the time provided by the statute and the rules.

19.    Cutting has offered evidence that, on December 3, 2020, she assigned

---

[42] *DiFebo*, 132 A.3d at 1158.

[43] *Id.* at 1159.

[44] 2017 WL 4676593.

[45] *Id.* at *5.

[46] *Id.* at *6 (citations omitted).

[47] *Id.* at *5.

[48] *Id.*

11

an investigator to determine whether the "Queen use[d] a janitorial service for the inside of [the] building."[49]  While an investigator followed up on this request, COVID restrictions impeded his efforts.[50]  On January 4, 2021, Cutting asked counsel for Live Nation and 500 Market: "Did your client or clients use any janitorial service for the area of the fall?"[51]  On March 29, 2021 counsel for Live Nation and 500 Market informed Cutting's counsel, "there was indeed a third party cleaning company – Commercial Cleaning Services or CCS – which may have been on duty at the time of the loss," and explained that the Queen's closure during the pandemic frustrated her efforts to secure a timely answer to the January 4, 2021 inquiry.[52]

20.    The Court concludes that Cutting demonstrated an intent to sue Commercial Cleaning within the statute of limitations.  Circumstances beyond her control, and largely the result of a global pandemic, frustrated her efforts to timely ascertain the identity of the cleaning company retained to service The Queen on the day of Cutting's injuries.    This is the type of mistake contemplated by Rule 15(c)(3).  Accordingly, the statute of limitations does not bar Cutting's claims against Commercial Cleaning.

---

[49] D.I. 92, Ex. B at 2.

[50] *Id.* at 1.

[51] Resp. to Mot. for Summ. J., Ex. A.

[52] Resp. to Mot. for Summ. J., Ex. B.

## B. *Material Facts in Dispute*

21.     Commercial Cleaning contends, "[a]t no time, either prior to [Cutting's] averred incident or subsequent to [her] averred incident of February 1, 2019, was Commercial Cleaning Services' personnel, which consisted of one person on site, asked to clean or address any sort of transitory condition which may or may not have been present on the floor surface at the time of [Cutting's] event."[53]   Cutting responds that "[e]ven if Commercial Cleaning was not put on actual notice of the wet stairway conditions, Commercial Cleaning should have been on constructive notice given the weather alone."[54]   It follows, Cutting asserts, "[w]hether any liquid substance should have been discovered by Commercial Cleaning prior to the fall is a question of fact that must be resolved by the jury."[55]

22.     A representative of Live Nation, Trenton Banks, stated during his deposition that during events at The Queen, patrons were permitted to smoke on an outside landing that was exposed to the elements.[56]   Employees of Live Nation monitored the landing area and, if snow or ice existed, "would shovel and salt the area."[57]   And it was not Commercial Cleaning's responsibility to shovel and salt the

---

[53] Mot. for Summ. J. ¶ 4.

[54] Resp. to Mot. for Summ. J. ¶ 6.

[55] *Id.* ¶ 7.

[56] Mot. for Summ. J., Ex. H.

[57] Mot. for Summ. J., Ex. I.

landing.[58]  Banks confirmed that there are no maintenance records documenting shoveling or salting in the day prior to Cutting's fall.[59]  While no anti-slip mats or other surface alteration existed to account for returning patrons tracking water or snow into the facility,[60] if a hazardous situation existed, Live Nation personnel would act to redirect patrons from the area.[61]

23.    David Brown, on behalf of Commercial Cleaning, stated in his deposition that Commercial Cleaning was responsible for checking the steps for "trash, debris, [and] spills" prior to events, but that they "have no responsibility during the event."[62]  Further, Brown noted that, on the night of Cutting's fall, "Commercial Cleaning Services was not alerted to any condition which needed their attention."[63]

24.    Allan Buckner, a Security Supervisor at the venue, explained that "housekeeping staff" or the "cleaning service" were responsible for inspecting the facility for spills or tripping hazards and would "roam around the venue . . . and note

---

[58] *Id.*

[59] *Id.*

[60] Mot. for Summ. J., Ex. J.

[61] Mot. for Summ. J., Ex. K.

[62] Resp. to Mot. for Summ. J., Ex. F at 16.

[63] Mot. for Summ. J., Ex. L.

spills or clean up spills and things like that."[64] This responsibility extended to "anywhere where [sic] a guest would travel" and included the stairwell.[65] If a Live Nation employee noticed a spill, they would "notify the cleaning staff of the location of the spill so they [could] clean up the spill."[66]

25. No contract between Commercial Cleaning and Live Nation or 500 Market has been produced. Thus, the only evidence of the scope of Commercial Cleaning's responsibilities comes from the deposition testimony set forth above. This testimony is equivocal, at best. There are genuine issues of material fact as to the scope of responsibilities of Commercial Cleaning.

## CONCLUSION

26. Because Cutting met all the conditions to invoke the grace period afforded by Superior Court Civil Rule 15(c)(3) and, because issues of material fact exist with respect to Commercial Cleaning's responsibilities, Commercial Cleaning's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

_____
Sean P. Lugg, Judge

---

[64] Resp. to Mot. for Summ. J., Ex. G at 41.

[65] *Id.*

[66] *Id.* at 42.